**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EILEEN LYNCH, ERIN RUBIO, and** | ) | |
| **ANEESA SALEH,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BOARD OF TRUSTEES OF COMMUNITY** | ) | <u>**JURY TRIAL DEMANDED**</u> |
| **COLLEGE DISTRICT NO. 508 d/b/a** | ) | |
| **CITY COLLEGES OF CHICAGO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**COMPLAINT**</u>

Plaintiffs, Eileen Lynch, Erin Rubio, and Aneesa Saleh, by and through their attorneys, complain of Defendant, Board of Trustees of Community College District No. 508 d/b/a City Colleges of Chicago, as follows.

**NATURE OF THE ACTION**

1.      This matter arises from significant failures of leadership that permeated the Richard J. Daley College ("Daley College") campus of Defendant City Colleges of Chicago ("CCC") which allowed for rampant employee misconduct and corruption, as well as discriminatory and retaliatory treatment of employees, including the Plaintiffs in this action,  Eileen Lynch, Erin Rubio, and Aneesa Saleh. Plaintiffs were employed as the Dean of Student Services (Plaintiff Lynch), and Associate Deans of Student Services (Plaintiffs Rubio and Saleh). Throughout their longstanding employment, they each performed their duties in an excellent manner, having never received any discipline, and having been rewarded with promotions on account of their job performance. Unfortunately, the significant mismanagement and lapses of leadership at Daley

College allowed for public corruption, jeopardizing student safety and welfare, and resulted in discrimination and retaliation directed at Plaintiffs and others. At all times, Plaintiffs – each of whom served in a student services role – sought to protect the students of the college and to preserve the integrity of the public institution. When they were made aware of significant and repeated employee misconduct that harmed both students and the integrity of the public institution, they reported these instances internally, to the Equal Employment Opportunity Office ("EEO Office"), and to the Office of Inspector General ("OIG"). Indeed, the OIG made a finding against the employee who was at the center of much of the misconduct. Perversely, however, rather than support the Plaintiffs for having honored their commitment to serve and protect the interests of the students and of the college in general, City Colleges of Chicago instead chose to unlawfully retaliate against Plaintiffs for having exposed the corruption and misconduct within Daley College.

## JURISDICTION AND VENUE

2.      Federal question jurisdiction is based upon 28 U.S.C. §1331. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

3.      Plaintiffs have complied with all administrative prerequisites by timely filing Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR"). Plaintiffs have received from the EEOC their right to sue and have requested the same from the IDHR. Plaintiffs have filed Charges of Discrimination related to subsequent retaliation for which they will request a right to sue, but which relate to and arise from the initial Charges and are, thus, also properly raised herein.

4.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this action occurred within this judicial district.

## PARTIES

5.      Plaintiff, Eileen Lynch, an individual, (hereinafter "Plaintiff Lynch" or "Ms. Lynch"), is a citizen and resident of Illinois and was formerly employed by Defendant, CCC, at its Daley College campus.

6.      Plaintiff, Erin Rubio, an individual, (hereinafter "Plaintiff Rubio" or "Ms. Rubio"), is a citizen and resident of Illinois and was formerly employed by Defendant, CCC, at its Daley College campus.

7.      Plaintiff, Aneesa Saleh, an individual, (hereinafter "Plaintiff Saleh" or "Ms. Saleh"), is a citizen and resident of Illinois and was formerly employed by Defendant, CCC, at its Daley College campus.

8.      Defendant, Board of Trustees of Community College District No. 508 d/b/a City Colleges of Chicago (hereinafter "Defendant" or "CCC"), is a local government entity that regularly conducts business throughout the State of Illinois and this judicial district, including at its Daley College Campus located at 7500 South Pulaski Road in Chicago, Illinois.

9.      At all times relevant hereto, Defendant operated colleges that received financial assistance from the federal government, Defendant employed more than fifteen (15) employees and was engaged in an industry affecting commerce, and Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, the Illinois Human Rights Act, and Title IX of the Education Amendments of 1972.

## FACTUAL ALLEGATIONS

10.     Plaintiff Lynch began her employment with Defendant as an Associate Dean of Student Services at Defendant's Daley College campus in January 2013. In recognition of her excellent work performance, Ms. Lynch was promoted to Interim Dean of Student Services in

August 2017 and to Dean of Student Services in October 2017.

11.     Plaintiff Rubio began her employment with Defendant as the Director of Athletics at Defendant's Daley College campus in September 2014. In recognition of her excellent work performance, Ms. Rubio was promoted to Interim Associate Dean of Student Services in August 2017 and to Associate Dean of Student Services in October 2017.

12.     Plaintiff Saleh began her employment with Defendant as a College Advisor at Defendant's Daley College campus in January 2013. In recognition of her excellent work performance, Ms. Saleh was promoted to Transfer Director in March 2016 and to Associate Dean of Student Services in November 2017.

13.     Throughout their employment, each of the Plaintiffs enjoyed an excellent work record, having been rewarded with promotions, receiving no discipline, and receiving much praise from their superiors.

14.     Both Ms. Lynch and Ms. Rubio received an award from CCC's Chancellor for their service to CCC, and during their employment, Daley College's President, Dr. Janine Janosky, expressed her gratitude to Plaintiffs for the "substantial amount of work and passion" that drove their "accomplishments for our students' success."

15.     Plaintiffs were each extremely committed to the mission of CCC and Daley College and performed their work with dedication and an unblemished work record; that is, until they were each unlawfully removed from their positions on January 22, 2020, after having reported significant misconduct and violations of law taking place within Daley College that threatened the well-being of students and the integrity of the public institution.

16.     Much of the misconduct Plaintiffs reported centers around one colleague, Roberto Torres, who was hired as Dean of Instruction at Daley College in February 2018.

4

17.     Mr. Torres was hired into his role notwithstanding a criminal history that included felony theft charges filed against him alleging he had stolen approximately $20,000 from a prior employer. The criminal charges were widely reported on in the news media, including one news article reporting that Mr. Torres had allegedly admitted his misappropriation of funds to the school he previously worked at.

18.     After he was hired into Daley College, Mr. Torres continued to commit acts of fraud and other misconduct that harmed the school, deprived the school of financial resources, and jeopardized the safety and well-being of its students.

19.     Perhaps the most bizarre of the fraudulent and concerning misconduct committed by Mr. Torres occurred in 2019 when Mr. Torres began telling colleagues and students that he was engaged to be married to a male physician, but that his fiancé had committed suicide.

20.     Mr. Torres told others at Daley College that he was struggling with the suicide of his fiancé and an ensuing fight with his fiance's family over the fiance's estate.

21.     During this time, Mr. Torres took paid bereavement leave from Daley College and often used his bereavement as a reason to arrive to work late, leave meetings early, or otherwise shirk his job responsibilities.

22.     Mr. Torres prominently displayed a photograph of his purportedly deceased fiancée on the credenza in his office, as part of a shrine in homage to the deceased partner, which was prominently displayed to colleagues and students alike who entered his office.

23.     During this time, Plaintiff Lynch was involved with providing support services to a student of Daley College who was experiencing suicidal thoughts and Mr. Torres offered to be an ally and support to the student, explaining that he believed his recent experience with suicide could be of assistance.

24. It turns out, however, that Mr. Torres had no such experience with suicide.

25. In fact, he had no fiancé.

26. Plaintiff Rubio discovered, in the fall of 2019, that Mr. Torres had manufactured this fanciful tale about a deceased fiancé he was grieving when she was reviewing a student athlete's medical authorization form and discovered that the form itself was fraudulent and was purported to have been completed by the physician who Mr. Torres had claimed was his deceased fiancé.

27. Plaintiff Rubio had reason to believe the form was fraudulent and, when looking up the physician who purportedly completed and signed the form, she discovered the photo was of the same person Mr. Torres had been prominently displaying in his office as the fiancé who had purportedly died by suicide.

28. It turns out that the physician was alive and well and married to a woman and had never completed a medical form for a Daley College student athlete.

29. Mr. Torres' conduct, in manufacturing a bizarre and very detailed tale, alarmed Plaintiffs, particularly given Mr. Torres' involvement with students, including one who had experienced suicidal ideation, and given that he used the claimed deceased fiancé to fraudulently obtain benefits for himself and then also used the identity of the same individual – who was, in fact, alive and well – to assist a student athlete with submitting a falsified medical authorization form.

30. Plaintiffs reported Mr. Torres' fraudulent and alarming misconduct to the Office of Inspector General in or around October 2019.

31. Even prior to that, Plaintiffs had reported Mr. Torres and others for additional misconduct that violated laws, regulations, and policies designed to protect students and

employees, preserve the assets of the college, and prevent public corruption.

32.     In April 2019, Plaintiffs Rubio and Lynch reported internally, and, at Plaintiff Lynch's directive, Plaintiff Rubio also made a formal complaint to Defendant's EEO Office, disclosing that Mr. Torres had failed to comply with CCC's reporting requirements when he was made aware of a sexual harassment situation involving the men's basketball team members, which would violate Title IX of the Education Amendments of 1972 ("Title IX") and Title VII of the Civil Rights Act of 1964 ("Title VII").

33.     Plaintiffs also disclosed that Mr. Torres maintained inappropriate boundaries with the men's basketball players, meeting with them privately, providing his personal cell phone number to players, and engaging in other conduct that was of a similarly concerning nature. They also reported that Mr. Torres acted against the interests of students, for example, by advising them against the recommendations of their college advisors and attempting to improperly interfere with their professors' grading.

34.     Plaintiffs additionally disclosed that Mr. Torres was treating the men's basketball players more favorably than the women's basketball players in violation of Title IX and that he was engaged in conduct that would violate National Junior College Athletic Association ("NJCAA") rules and regulations and would place Daley College's basketball team and its players in jeopardy of losing their eligibility.

35.     Plaintiffs Saleh and Lynch reported, internally and to the EEO Office, additional allegations of sexual harassment involving another employee of Daley College who made lewd gestures of oral sex in a room full of colleagues and students, including female colleagues and students.

36.     Plaintiff Saleh later submitted another EEO complaint in November 2019 to the EEO office when she experienced retaliation by the colleague whom she reported.

37.     The EEO office never reported back to her about the original sexual harassment complaint or her complaint of retaliation.

38.     Previously, in May 2018, Plaintiff Lynch had also filed a complaint with the EEO Office on behalf of herself, reporting discrimination on the basis of her pregnancy and age and retaliatory acts that she reported were creating a hostile work environment for her. Similarly, she never heard back, even after inquiring throughout the following year of several individuals in Defendant's Human Resources and Labor Relations departments.  She followed up with the EEO Office the day before she was fired by Defendant, seeking an update on any investigation, which she never received because she was instead fired from her job.

39.     When Plaintiff Rubio also did not hear back from the EEO Office regarding her April 2019 complaint against Roberto Torres for his various acts of misconduct and Title IX and Title VII violations, she and Plaintiff Lynch reported their continued concerns about Roberto Torres to senior Labor Relations personnel.

40.     In the late summer of 2019, Plaintiffs Lynch and Rubio participated in a Title IX training session with senior CCC Labor Relations personnel.

41.     After the training session, they approached the Labor Relations personnel to report the prior concerns about Roberto Torres that had been formally reported to the EEO Office, but in response to which the EEO Office had taken no action.

42.     Specifically, Plaintiffs Rubio and Lynch shared their concerns about Mr. Torres' treatment of a female athletic trainer and reported that Mr. Torres had treated the men's basketball players more preferentially than the female players, offering them additional benefits that were not

offered to the female players in violation of Title IX and that, in some instances, would violate NJCAA rules and regulations and place the program and players in jeopardy.

43. Plaintiffs Rubio and Lynch also disclosed that Mr. Torres had bypassed Defendant's payment system to allow a student to register for classes without paying the tuition fees, thereby depriving City Colleges of much needed revenue and breaching his own fiduciary duty.

44. When Defendant continued to take no action to meaningfully investigate or remedy the Plaintiffs' reports, Plaintiff Rubio then followed up with the EEO office in September 2019 and requested a copy of the EEO complaint she had made against Mr. Torres.

45. Plaintiffs Lynch and Rubio then reported their continued concerns to their superiors in September 2019, including to Daley College President Janine Janosky, and Vice-President, Anne Panomitros.

46. Specifically, Plaintiff Lynch relayed to Vice-President Panomitros that Plaintiff Rubio and the then Athletic Director had serious concerns about Roberto Torres, including as relating to the men's basketball team, and that they would be bringing these concerns directly to President Janosky.

47. Plaintiff Rubio and the Athletic Director then, in fact, met with President Janosky and disclosed to her that Roberto Torres had been engaging in conduct that violated several laws and regulations that harmed the college and its students and that could result in possible violations of NJCAA rules, which had placed the college at risk of losing eligibility in the past. They also informed President Janosky that Mr. Torres had bypassed CCC's payment system multiple times and had continued to attempt to do so, that he had been allowing improper late registration and improperly backdating registration into classes to make it appear as though a student had been in

a class from the beginning, and that he had permitted students to enroll in classes they did not test

into which not only violates CCC policies, but is against the students' interests and jeopardizes

their academic well-being.

48.     Plaintiff Rubio and the Athletic Director also informed President Janosky during

this meeting of their concerns about the inappropriate and concerning lack of boundaries between

Mr. Torres and the men's basketball players.

49.     President Janosky asked them to gather additional information, but when they

initially followed up with her, President Janosky instructed them to "table" the investigation and

take no further action.

50.     President Janosky then never followed up with any of the Plaintiffs regarding their

concerns or reports of misconduct regarding Roberto Torres or any other employee.

51.     Plaintiffs then discovered the disturbing fraud perpetuated by Mr. Torres relating

to the purportedly deceased fiancé who was never a fiancé at all, but was alive and well and whose

identity was being used by Mr. Torres to fraudulently obtain benefits from CCC and to assist a

student with submitting a fraudulent medical form.

52.     Plaintiffs were each terribly concerned about Mr. Torres' continued misconduct

and the threat he posed to the college and its students.

53.     Accordingly, in October 2019, the Plaintiffs collectively made two formal reports

to the OIG reporting Mr. Torres' misconduct as previously reported to the EEO Office, to Labor

Relations, and to President Janosky.

54.     Plaintiffs also reported the fraud surrounding the purportedly deceased fiancé and

their great concern about Mr. Torres' continued presence at the college and access to students,

including sharing with the OIG that Mr. Torres used his purported experience with suicide to step

in and assist a student who himself was experiencing suicidal thoughts and was at his most vulnerable.

55.     In November 2019 and December 2019, the OIG sent investigators to the Daley College campus to investigate the two complaints against Roberto Torres.

56.     The OIG investigators spoke with several employees of Daley College, including Plaintiffs, and gathered documents, including from the Student Services department which was led by Plaintiffs.

57.     During this time, several employees within CCC, including Mr. Torres himself and including President Janosky and Vice-President Panomitros, told Plaintiffs that it was well known that they were the individuals who reported Mr. Torres to the OIG.

58.     Mr. Torres told others that he was going to get "those Daley bitches" referring to Plaintiffs and that he knew they had reported him to the OIG, and he told Plaintiff Rubio directly, on one of the days the OIG investigators came to campus and spoke with her, that he knew the OIG complaints about him had come from her department.

59.     Also in or around this same timeframe, in November 2019, Plaintiff Rubio announced that she was pregnant with her first child.

60.     In response to this announcement, and in retaliation for her reporting, Defendant responded by removing some of Ms. Rubio's job duties. She then went to the Human Resources Department to complain that her job duties should not be removed on account of her pregnancy, but no action was taken to restore those duties.

61.     Defendant began treating Plaintiffs disparately and also removed job duties from Plaintiff Lynch.

62.     Incredibly, Defendant reassigned certain of the job duties it removed from

Plaintiffs' department to Mr. Torres – the very individual Plaintiffs were reporting was engaged in misconduct that jeopardized the students and harmed the college.

63.     President Janosky and Vice-President Panomitros in fact expressed their desire to protect Mr. Torres and their anger with Plaintiffs' reporting.

64.     In conversations with Plaintiff Lynch in late November 2019, both President Janosky and Vice-President Panomitros told Plaintiff Lynch that they knew that the OIG investigations were initiated by her and her department, which included Plaintiffs Rubio and Saleh.

65.     Vice-President Panomitros even told Plaintiff Lynch that she and President Janosky were "disgusted" by the reporting and that it was causing problems for the college.

66.     Within weeks, at the direction of President Janosky, Plaintiffs were all fired from their positions under the plainly pretextual guise that each of their positions were eliminated – the Dean of Student Services and the Associates Deans of Students Services.

67.     Alas, the college merely changed the title of these roles to Dean of Student Development and Associate Dean of Student Development and did not give Plaintiffs advance notice or invite them to apply to keep their jobs under these new titles.

68.     Instead, Plaintiffs were fired after, and on the heels of, having engaged in extensive protected activity as described herein and within days of Plaintiff Rubio having submitted paperwork under the Family Medical Leave Act to secure her upcoming maternity leave.

69.     In a stunning dereliction of duty, President Janosky chose to retain Roberto Torres, thereby placing the students and the school at continued risk of harm, while choosing to remove the employees who were at all times doing their best to protect the school and its students.

70.     The OIG subsequently made a finding against Roberto Torres, confirming that he had, in fact, manufactured a fake fiancé and a fake suicide and finding that he had used the fake

deceased fiancé to fraudulently obtain benefits and also made a finding that the fake fiance's identity was used on the fraudulent medical form submitted by the student.

71.     Roberto Torres was not the only male employee of Daley College who had committed misconduct, but was retained by the college nevertheless.

72.     Defendant had retained at least one other male employee who had also been subject to an OIG investigation and retained him even after the OIG made a finding against him.

73.     Conversely, Defendant treated Plaintiffs, who are each female, very differently in firing them when they committed no misconduct and when they each only ever sought to protect the college.

74.     In fact, even during the course of their terminations, Defendant continued to treat Plaintiffs disparately. Whereas other employees, including males who did not engage in protected reporting, were permitted to exit gracefully and retrieve their personal belongings, President Janosky refused to allow Plaintiffs to return to campus to retrieve their belongings. Plaintiff Lynch had to contact the Chancellor and ask him to intercede to simply allow them to retrieve their belongings from the campus where, at that time, Mr. Torres remained employed and unencumbered in his movements.

75.     Defendant continues to retaliate against each Plaintiff without justification in relation to employment opportunities.

76.     When the position of Dean of Student Development was later posted for applications, Plaintiff Lynch applied for the position which was essentially the job she had just held, but she was not even granted an interview. Instead, the position was given to a male employee who is not as qualified for the role as Plaintiff Lynch.

13

77.     Subsequent to their unlawful terminations from Daley College, each Plaintiff applied for a position for which they were eminently qualified within CCC, but Defendant refused to consider them or even grant the Plaintiffs an interview for these positions, further retaliating against each and continuing to punish each for having wanted to protect Daley College and its students from harm by reporting extensive misconduct to their superiors and to the EEO Office and Office of Inspector General.

## COUNT I
## TITLE VII: SEX DISCRIMINATION
### (All Plaintiffs)

78.     Plaintiffs re-allege paragraphs 1 through 77 and incorporate them as though fully set forth herein.

79.     Title VII as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000(e), et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex.

80.     By its conduct as alleged herein, Defendant subjected Plaintiffs to sex discrimination in violation of Title VII, in that Plaintiffs were treated disparately on the basis of their sex, female.

81.     Defendant's conduct toward Plaintiffs illustrated a willful and/or reckless disregard of Plaintiffs' right to be free from sex discrimination.

82.     As a result of Defendant's unlawful conduct, Plaintiffs have lost wages and other benefits, have suffered emotional distress, embarrassment, and humiliation, loss of enjoyment of life, loss to their reputations, and their careers have been damaged.

83.     Plaintiffs demand to exercise their right to a jury trial of this matter.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant on Count I and that it:

a) Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act as amended;

b) Award Plaintiffs the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c) Order Defendant to reinstate Plaintiffs to a position equal to or greater than their former positions; or, in the alternative, award Plaintiffs the value of compensation and benefits they will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiffs damages for emotional distress and compensatory damages;

e) Award Plaintiffs punitive damages;

f) Award Plaintiffs reasonable attorney's fees, costs, and disbursements;

g) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i) Award Plaintiffs any and all other relief to which they may be entitled as the Court deems just in the premises.

## COUNT II
### TITLE VII: PREGNANCY DISCRIMINATION
#### (Plaintiff Rubio)

84. Plaintiff re-alleges paragraphs 1 through 77 and incorporates them as though fully set forth herein.

85. Title VII as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of sex. Specifically, 42 U.S.C. §2000e(k) makes it unlawful for an employer to discriminate against an individual in the terms, conditions, or privileges of

15

employment on the basis of pregnancy.

86.     By its conduct as alleged herein, Defendant subjected Plaintiff to sexual discrimination in violation of the Pregnancy Discrimination Act.

87.     Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from pregnancy discrimination.

88.     As a result of Defendant's unlawful conduct, Plaintiff has lost wages and other benefits, has suffered emotional distress, embarrassment, and humiliation, loss of enjoyment of life, loss to her reputation, and her career has been damaged.

89.     Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff Rubio respectfully requests that this Court enter judgment in her favor and against Defendant on Count II and that it:

a)      Declare that Defendant's conduct constitutes unlawful pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1991;

b)      Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c)      Order Defendant to reinstate Plaintiff to a position equal to or greater than her former position; or, in the alternative, award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

d)      Award Plaintiff damages for emotional distress and compensatory damages;

e)      Award Plaintiff punitive damages;

f)      Award Plaintiff reasonable attorney's fees, costs, and disbursements;

g)      Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with it from engaging in any unlawful employment practice;

h)      Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with it to institute and carry out all policies

16

and practices to provide equal employment opportunities for all and to prevent discrimination; and

i) Award Plaintiff any and all other relief to which she may be entitled as the Court deems just in the premises.

## COUNT III
## TITLE VII: RETALIATION
### (All Plaintiffs)

90. Plaintiffs re-allege paragraphs 1 through 77 and incorporate them as though fully set forth herein.

91. Title VII of the Civil Rights Act of 1991, specifically 42 U.S.C. §2000(e)(3), makes it unlawful for an employer to discriminate or retaliate against any employee because she has opposed any unlawful employment practice or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing pursuant to Title VII.

92. By its conduct as alleged herein, Defendant discriminated and retaliated against Plaintiffs for exercising their rights under Title VII.

93. Defendant's conduct toward Plaintiffs illustrated a willful and/or reckless disregard of Plaintiffs' right to be free from impermissible retaliatory conduct.

94. As a result of Defendant's unlawful conduct, Plaintiffs have lost wages and other benefits, have suffered emotional distress, embarrassment, and humiliation, loss of enjoyment of life, loss to their reputations, and their careers have been damaged.

95. Plaintiffs demand to exercise their right to a jury trial of this matter.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant on Count III and that it:

a) Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act as amended;

17

b)      Award Plaintiffs the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c)      Order Defendant to reinstate Plaintiffs to a position equal to or greater than their former positions; or, in the alternative, award Plaintiffs the value of compensation and benefits they will lose in the future as a result of Defendant's unlawful conduct;

d)      Award Plaintiffs damages for emotional distress and compensatory damages;

e)      Award Plaintiffs punitive damages;

f)      Award Plaintiffs reasonable attorney's fees, costs, and disbursements;

g)      Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h)      Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i)      Award Plaintiffs any and all other relief to which they may be entitled as the Court deems just in the premises.

**COUNT IV**
**TITLE IX: RETALIATION**
**(All Plaintiffs)**

96.      Plaintiffs re-allege paragraphs 1 through 77 and incorporate them as though fully set forth herein.

97.      Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq., makes it unlawful for an employer who received federal education funding to discriminate or retaliate against persons who oppose sexual harassment or discrimination.

98.      At all times relevant hereto, Defendant was an educational institution receiving financial assistance from the federal government.

99.      By its conduct as alleged herein, Defendant discriminated and retaliated against Plaintiffs for exercising their rights under Title IX.

100. Defendant's conduct toward Plaintiffs illustrated a willful and/or reckless disregard of Plaintiffs' right to be free from impermissible retaliatory conduct.

101. As a result of Defendant's unlawful conduct, Plaintiffs have lost wages and other benefits, have suffered emotional distress, embarrassment, and humiliation, loss of enjoyment of life, loss to their reputations, and their careers have been damaged.

102. Plaintiffs demand to exercise their right to a jury trial of this matter.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant on Count IV and that it:

a) Declare that Defendant's conduct was in violation of Title IX of the Education Amendments;

b) Award Plaintiffs the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

c) Order Defendant to reinstate Plaintiffs to a position equal to or greater than their former positions; or, in the alternative, award Plaintiffs the value of compensation and benefits they will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiffs damages for emotional distress and compensatory damages;

e) Award Plaintiffs punitive damages;

f) Award Plaintiffs reasonable attorney's fees, costs, and disbursements;

g) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i) Award Plaintiffs any and all other relief to which they may be entitled as the Court deems just in the premises.

**COUNT V**

**RETALIATORY DISCHARGE**
**(All Plaintiffs)**

103.     Plaintiffs re-allege paragraphs 1 through 77 and incorporate them as if fully set forth herein.

104.     The State of Illinois has a clearly mandated public policy preventing employers from violating state or federal law, rules, or regulations in the establishment, provision, and public financing of community college education institutions and programs to the public and encouraging employees to report suspected violations of illegal activity.

105.     The State of Illinois additionally has a clearly mandated public policy to protect the health, safety and welfare, and finances of its citizens in the provision of those community college services, including to the students enrolled in the institutions statutorily authorized to provide those services.

106.     There are many expressions of the public policy embodied in the statutes, rules, and regulations applicable to the establishment, provision, and public financing of community college programs to Illinois students, including but not limited to: the Board Policies and Procedures of the Board of Trustees of Community College District No. 508; the Public Community College Act (110 ILCS 805/1-1 et seq.); Title IV of the Higher Education Act (P.L. 89-329) and its implementing regulations; the Collegiate Athletic Association Compliance Enforcement Procedures Act (110 ILCS 25/1 et seq.); and 720 ILCS 5/33-3 (Official Misconduct).

107.     Plaintiffs' reports of misconduct, fraud, and corruption, as described herein, directly implicate and further the clear mandate of Illinois public policy to protect the health, safety, welfare, and finances of the students and of the public.

108.     By its conduct as alleged herein, Defendant has violated the clearly mandated

public policy of the State of Illinois by retaliating against Plaintiffs for having raised concerns to their management superiors, the institution's EEO office, and the Office of Inspector General as described herein.

109.    Defendant's conduct toward Plaintiffs illustrated a willful and reckless disregard of Plaintiffs' right to be free from impermissible retaliatory conduct.

110.    As a result of Defendant's unlawful conduct, Plaintiffs have lost wages and other benefits, have suffered emotional distress, embarrassment, and humiliation, loss of enjoyment of life, loss to their reputations, and their careers have been damaged.

111.    Plaintiffs demand to exercise their right to a jury trial of this matter.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant on Count V and that it:

a) Declare that Defendant's actions constitute unlawful retaliatory discharge in violation of Illinois public policy;

b) Award Plaintiffs the value of all lost compensation and benefits as a result of Defendant's unlawful conduct;

c) Order Defendant to reinstate Plaintiffs to positions equal to or greater than their former positions; or, in the alternative, award Plaintiffs the value of compensation and benefits they will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiffs any applicable compensatory and punitive damages;

e) Award Plaintiffs any applicable reasonable attorney's fees, costs, and disbursements;

f) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent retaliation; and

h) Award Plaintiffs any and all other relief to which they may be entitled as the Court deems just in the premises.

## COUNT VI
## RETALIATION: ILLINOIS WHISTLEBLOWER ACT §15
### (All Plaintiffs)

112.    Plaintiffs re-allege paragraphs 1 through 77 and incorporate them as if fully set forth herein.

113.    The Illinois Whistleblower Act, 740 ILCS 174/15 makes it illegal for an employer, inter alia, to either threaten or retaliate against an employee who discloses information to a government agency where the employee has reasonable cause to believe that the information discloses a violation of a state or federal law, rule, or regulation.

114.    Plaintiffs reasonably believed that the conduct of Roberto Torres as alleged above violated one or more state or federal laws or regulations, including but not limited to: the Board Policies and Procedures of the Board of Trustees of Community College District No. 508; the Public Community College Act (110 ILCS 805/1-1 et seq.); Title IV of the Higher Education Act (P.L. 89-329) and its implementing rules and regulations; the Collegiate Athletic Association Compliance Enforcement Procedures Act (110 ILCS 25/1 et seq.) and its implementing rules and regulations; and other state laws prohibiting theft and fraud.

115.    By its conduct as alleged herein, Defendant has violated the Illinois Whistleblower Act in terminating Plaintiffs' employment for having disclosed to a government agency conduct that they reasonably believed violated one or more state or federal laws or regulations. 740 ILCS 174/15; 740 ILCS 174/30.

116.    Defendant's conduct toward Plaintiffs illustrated a willful and reckless disregard of Plaintiffs' right to be free from impermissible retaliatory conduct.

117.    As a result of Defendant's unlawful conduct, Plaintiffs have lost wages and other benefits, have suffered emotional distress, embarrassment, and humiliation, loss of enjoyment of

life, loss to their reputations, and their careers have been damaged.

118.     Plaintiffs demand to exercise their right to a jury trial of this matter.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor

and against Defendant on Count VI and that it:

a) Declare that Defendant's actions constitute unlawful retaliation in violation of the Illinois Whistleblower Act;

b) Award Plaintiffs interest on all lost compensation and benefits as a result of Defendant's unlawful conduct;

c) Order Defendant to reinstate Plaintiffs to a position equal to or greater than their former positions; or, in the alternative, award Plaintiffs the value of compensation and benefits they will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiffs any applicable compensatory and punitive damages;

e) Award Plaintiffs any applicable reasonable attorney's fees, costs, and disbursements;

f) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent retaliation; and

h) Award Plaintiffs any and all other relief to which they may be entitled as the Court deems just in the premises.

## COUNT VII
## RETALIATION: ILLINOIS WHISTLEBLOWER ACT §20.1
### (All Plaintiffs)

119.    Plaintiffs re-allege paragraphs 1 through 77 and incorporate them as if fully set forth herein.

120.    The Illinois Whistleblower Act, 740 ILCS 174/20.1, makes it illegal for an employer to take any action against an employee who discloses or attempts to disclose public corruption or wrongdoing.

121.    As alleged herein, Plaintiffs reported and attempted to report numerous instances of corruption or wrongdoing by one or more public employees within a public institution, including but not limited to misappropriation of funds or assets, forgery or alteration of documents, alteration and attempted alteration of academic and student records, and other corrupt conduct as described herein.

122.    By its conduct as alleged herein, Defendant has violated the Illinois Whistleblower Act in terminating Plaintiffs' employment for having disclosed or attempted to disclose public corruption or wrongdoing.  740 ILCS 174/20.1; 740 ILCS 174/30.

123.    Defendant's conduct toward Plaintiffs illustrated a willful and reckless disregard of Plaintiffs' right to be free from impermissible retaliatory conduct.

124.    As a result of Defendant's unlawful conduct, Plaintiffs have lost wages and other benefits, have suffered emotional distress, embarrassment, and humiliation, loss of enjoyment of life, loss to their reputations, and their careers have been damaged.

125.    Plaintiffs demand to exercise their right to a jury trial of this matter.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant on Count VII and that it:

a) Declare that Defendant's actions constitute unlawful retaliation in violation of the Illinois Whistleblower Act;

b) Award Plaintiffs interest on all lost compensation and benefits as a result of Defendant's unlawful conduct;

c) Order Defendant to reinstate Plaintiffs to a position equal to or greater than their former positions; or, in the alternative, award Plaintiffs the value of compensation and benefits they will lose in the future as a result of Defendant's unlawful conduct;

d) Award Plaintiffs any applicable compensatory and punitive damages;

e) Award Plaintiffs any applicable reasonable attorney's fees, costs, and disbursements;

f) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

g) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent retaliation; and

h) Award Plaintiffs any and all other relief to which they may be entitled as the Court deems just in the premises.

Respectfully submitted,

By:       s/ M. Megan O'Malley
           Attorney for the Plaintiff

M. Megan O'Malley
John P. Madden
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
ARDC No. 6243598
momalley@ompc-law.com