# EXHIBIT 1

1                  IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS

2                      EASTERN DIVISION

3

   EILEEN LYNCH, ERIN RUBIO, and   )  No. 21 C 366

4  ANEESA SALEH,              )
                           )

5                Plaintiffs,    )
                           )

6           vs.           )  Chicago, Illinois
                           )

7  BOARD OF TRUSTEES OF COMMUNITY  )
   COLLEGE DISTRICT NO. 508 d/b/a  )

8  CITY COLLEGES OF CHICAGO,     )
                           )  January 31, 2023

9               Defendant.    )  9:45 p.m.

10

                  TRANSCRIPT OF PROCEEDINGS

11            BEFORE THE HON. SARA L. ELLIS

12

  APPEARANCES:

13

  For the Plaintiffs:   MS. MARGARET MEGAN O'MALLEY

14                     O'Malley & Madden, P.C.,
                     542 South Dearborn Street, Suite 660,

15                     Chicago, Illinois  60605

16

  For the Defendant:    MR. IAN H. FISHER

17                     MR. BENJAMIN S. MORRELL
                     Taft, Stettinius & Hollister LLP,

18                     111 East Wacker Drive,
                     Chicago, Illinois  60601

19

20

21

22

                   PATRICK J. MULLEN

23                Official Court Reporter
              United States District Court

24       219 South Dearborn Street, Room 1412
               Chicago, Illinois  60604

25                (312) 435-5565

```
 1              (Telephonic proceedings on the record.)

 2              THE CLERK:  21 CV 366, Lynch versus Board of Trustees

 3    of Community College District No. 508.

 4              MS. O'MALLEY:  Good morning, Your Honor.  Megan

 5    O'Malley for the plaintiff.

 6              MR. FISHER:  Good morning, Your Honor.  Ian Fisher and

 7    Benjamin Morrell for the defendant.

 8              THE COURT:  All right.  Good morning.

 9              So we've got a motion for leave to file excess pages

10    at docket 75.  That's granted.  Then we've got plaintiffs'

11    motion to compel.  So tell me where you are in terms of

12    production.

13              MR. FISHER:  Your Honor, we have finished our --

14              THE COURT:  Excuse me.  Hold on.  You've got to

15    identify yourself.

16              MR. FISHER:  Oh, I'm sorry, Your Honor.  This is Ian

17    Fisher for the defendant.  We have completed our non-ESI

18    document production.  We are working our way through a very

19    large corpus of ESI, and we've produced -- it's over 20,000

20    pages, and we've so far produced over 6,000 pages.  We're

21    probably a little over a third of the way through it, but we're

22    using technology-assisted review or TAR which hopefully will

23    accelerate review as we get deeper in.  So we do have

24    two-thirds of the ESI corpus remaining to review.

25              There is the third supplemental interrogatory
```

1    responses, written responses.  We had said that we would have

2    them by today.  The problem is we've spent most of our time

3    working in this case responding to the motion to compel, so

4    we're going to need another week to get that done.  Beyond

5    that, we're done with written discovery.

6         THE COURT:  All right.  So when do you think you are

7    going to be able to finish reviewing the emails that you've

8    pulled -- or documents that you've pulled through the ESI.

9         MR. FISHER:  So this is a guess, Your Honor, because I

10   don't know what we're going to hit, but we could probably get

11   through it in another two months, you know, given -- assuming

12   that we're going to get an acceleration from TAR.

13        THE COURT:  All right.  Then let me hear from the

14   plaintiffs.

15        MS. O'MALLEY:  Thank you, Judge.  Our concern -- you

16   know, we've been very patient.  Our concern is that in November

17   the defendant said that within a few business days they would

18   have served their answers and supplemental productions, and

19   here we are at January 31st and they're still saying that they

20   haven't done those and we don't have those.

21        Also, Judge, their motion concedes -- their portion of

22   the motion concedes that, well, they thought they were done and

23   then their client found some additional documents in December

24   and they produced those.  They thought they were done, and that

25   is their words, not mine.  Then the cycle repeated itself in

1    January.  There was additional documents.  They produced those

2    as to non-ESI.

3            So in our motion we have areas where there is a lack

4    of completeness with regard to several of the document requests

5    that they had either agreed to produce and/or that the Court

6    compelled them to produce our last time around, and we have no

7    idea if those are complete or not.  We're only hearing for the

8    first -- it really took us bringing this motion for the

9    defendant to send a single email and they begun their review --

10   they began their review, sorry, on November 1st.  Then to tell

11   us for the first time that they now think it's complete, this

12   is why we've asked for an affidavit of completeness.

13           But there are areas in our motion that we'd like to go

14   through where we can demonstrate that they did not complete it,

15   that the stuff that they agreed to produce and that the Court

16   compelled them to produce are not in the production.  So to the

17   extent that they're representing that everything they've given

18   us is complete, we disagree.

19           Then there are areas also of substantive impasse with

20   regard to three entries in the privilege log.  The last time we

21   were in court, Your Honor had suggested that they send you

22   stuff for in camera review.  They were going to update their

23   log to have the parties continue to discuss two of the other

24   entries.  They did update their log.  We continue to contend

25   that the entries, there's only three entries at issue that

1   either were not privileged in full or at least in part, and

2   they should produce the unprivileged section.  They have

3   refused.  We've asked for an in camera inspection, and they're

4   refusing that.  So we've asked for that as part of our motion

5   to compel.

6          There's also an issue with regard to -- a substantive

7   issue with regard to the text messages, and the other specific

8   issues which are outlined in the motion relating to missing

9   information and missing performance reviews that they were

10  compelled to produce are in things that we dispute the

11  completeness of and we have asked the Court to compel the

12  information.

13         Some of it is as simple as contact information for

14  employees.  They only gave us the work email address and that's

15  it, and they know because they've produced contact information

16  previously that we were seeking and that they are obligated to

17  provide us for former employers and non-management their

18  personal contact information, and they're just refusing to do

19  so.  They did it initially, and for the next crop of people who

20  are the biggest crop of people they're just saying no.

21         So we do have a number of disputes that we do think

22  need to be resolved by the Court because at this point we don't

23  even have the third responses to interrogatories and document

24  production that was promised back in November.  We don't have

25  the complete emails.  We have a dispute over the texts and the

1  privilege log entries, and we don't agree with their

2  representation that the other stuff has been completed.

3          MR. FISHER:  Your Honor, may I?

4          THE COURT:  You may.

5          MR. FISHER:  Again, Ian Fisher for the defendant.

6  First of all, a lot of this is coming up for the first time in

7  this motion.  The request for the personal email addresses for

8  those employees, the first time we heard was when we saw the

9  24-page draft motion to compel on Friday which, like I said,

10  we've spent all of our time in this case working on responding

11  to that.  With regard to -- and that was a broad-ranging

12  argument.  But I would point out that if a document doesn't

13  exist or after diligent review we can't find it, I don't know

14  what to say, Your Honor.

15          For example, performance reviews.  We've been accused

16  of not producing performance reviews that plaintiffs say exist.

17  They don't exist.  We do have performance reviews for some

18  deans, and we produced those.  For other deans, they don't

19  exist.  Whether that's good corporate practice or not, that's

20  not what we're here to debate.  If the document exist, it

21  doesn't exist.

22          Plaintiffs know, plaintiffs know that we have

23  represented that we have finished our non-ESI production.  In

24  fact, we had a sentence that we framed in the draft joint

25  status report last Tuesday stating that the defendant believes

1    it produced all documents after diligent review, and the

2    plaintiffs removed that from the document before filing it.  So

3    for whatever reason, if there is a document that they think

4    exists, we can go and triple-check for it.  But if we've got a

5    document that we agreed to produce, we have produced it.

6            I think that in a deposition if something comes up and

7    it doesn't exist, I mean, we'll deal with it.  I mean, if

8    something comes up and it exists and we somehow missed it,

9    we'll deal with it, but right now we've completed our non-ESI

10   document production.

11           MS. O'MALLEY:  Your Honor, if I could respond, it's

12   Megan O'Malley.

13           THE COURT:  Go ahead.

14           MS. O'MALLEY:  Okay.  When they made that

15   representation that they have completed non-ESI discovery in

16   November, they in December sent us a letter saying:  Hey, we

17   found more documents.

18           This is in their motion -- in their section of the

19   motion on page 36.  Okay?  These are not my words.  These are

20   their words:

21           "Defendant discovered some more documents when

22   confirming the searches at the colleges had been accurately

23   completed.  Defendant informed plaintiffs of this in

24   mid-December and sent plaintiffs an additional production in

25   late December.  This cycle repeated in January.  On January

 1   16th, defendant provided the following update and said that

 2   another supplemental production of non-ESI is forthcoming."

 3          So for defendant to suggest that we are somehow

 4   manipulating this is not correct.  We have a -- we have been

 5   very, very patient.  We understand that this case was filed

 6   shortly before the pandemic and that they have a bureaucratic

 7   client who has all kinds of systems in place.  However, you

 8   know, the reason we brought this motion is it has been two

 9   years and there are items that we have outlined in our motion

10   that are still missing.

11          You know, the first time -- this draft was sent to

12   them 11 days ago, but we've been discussing these issues for

13   two years.  We've had in-person meetings, hours and hours and

14   hours and hours of telephone conversations, emails, letters,

15   and I couldn't count them if I tried.  So it's just not correct

16   that this is the first -- that they're surprised by any of

17   this.

18          We appreciate that they continue to go back to their

19   client, but every time they say this is it then there's more.

20   So that's why we said look -- and maybe frankly defense counsel

21   might welcome that an affidavit of completeness from his client

22   would be required because then it gets them off the hook on

23   having to certify the completeness when their client has told

24   them this is it but it's actually not.

25          So that's why we brought these issues.  There are

9

1  specific debates or specific issues that we would like to go

2  through that are raised in the motion.  We brought this motion

3  to resolve a lot of these written discovery issues so that we

4  can put these in the rearview mirror and, you know, as we get

5  the ESI, start to -- the emails, start to review those so that

6  we can start to advance the case toward oral discovery.  So I

7  don't know if Your Honor wants to do that now or if you want to

8  set a different time, but we would like to go through these

9  substantive disputes that are raised in the motion.

10          MR. FISHER:  Your Honor, may I say one thing on that?

11          THE COURT:  You can but, you know, I have spent I

12  don't know how long listening to the two of you go back and

13  forth, and I'm not at all surprised at why this case has not

14  moved.  If you're -- I want to just get this resolved and move

15  through it and not listen to a list of grievances, a response

16  to grievances, and get to the actual substance.  So --

17          MS. O'MALLEY:  This is Meghan -- oh, go ahead.

18          MR. FISHER:  Your Honor?

19          THE COURT:  No, no.

20          MR. FISHER:  I'm sorry.  Are you saying "go," Your

21  Honor?

22          THE COURT:  No, I'm saying no, I don't want to hear

23  any more.  So I will go through this.

24          MS. O'MALLEY:  Thank you, Judge.

25          MR. FISHER:  Thank you, Your Honor.

1      THE COURT:  So with the ESI, defendant says you need

2  how much longer to go through it all and be done in terms of

3  the review and production?

4      MR. FISHER:  The production only takes a few days.

5  Like the last two productions we gave to our ESI specialist who

6  took either 24 or 48 hours to process them and produce them, so

7  that's not the problem.  It's the review that's the issue.  I

8  think we can get through it in -- assuming we get a boost from

9  TAR, we can get through it in two months.

10      THE COURT:  So you are to produce everything.  I would

11  like it done on a rolling basis, but everything needs to be

12  finished by March 31st.

13      MR. FISHER:  Thank you, Your Honor.  I think that is

14  attainable.

15      THE COURT:  You can provide an affidavit of

16  completeness.  So if I'm giving you two months, you need to

17  make sure that you have found everything and produced

18  everything.

19      MR. FISHER:  Understood, Your Honor.

20      THE COURT:  All right.  Then the text messages, so

21  where are you with the text messages?  So have you contacted

22  all the custodians?

23      MR. FISHER:  Yes, Your Honor.  We contacted all 21

24  custodians that we could reach.  There's some we could not

25  reach.  The ones we could not reach are former employees.  We

1   gave them instructions as to what we were seeking and, you

2   know, anything responsive or relevant.  They came back to us

3   and reported whether they had relevant or responsive texts or

4   not.  One thought she might and didn't know, and then anyone

5   who either reported that they did, the one who thought she

6   might, and then anybody we expected would, we hired an outside

7   ESI vendor to electronically search their phones.  We thought

8   that was the least intrusive way of doing it, and we used the

9   ESI protocol that the plaintiff had given us, the 12 different

10  sets of hundreds of searches.

11          We got a surprisingly small number of texts, but at

12  the end of the day it's not surprising that people were not

13  using their personal devices to talk about, you know,

14  substantive personnel issues.  But we've produced everything

15  that we found, and we don't have any outstanding employees that

16  we -- who reported that they have texts or might have texts

17  that we have not collected.

18          MS. O'MALLEY:  Your Honor, if I could respond, it's

19  Megan O'Malley.

20          THE COURT:  Go ahead.

21          MS. O'MALLEY:  All right.  So herein lies the dispute,

22  because they've produced exactly two text messages and they're

23  text messages that we produced to them initially so we knew

24  that they existed between one of our plaintiffs and the

25  chancellor.  So essentially the chancellor said:  Yes,

1  obviously I texted with her because she produced those.  I'll

2  give you those from my phone.

3         The issue that we have is two-fold.  Number one, our

4  ESI protocol gave email search terms that very clearly

5  delineated these are search terms for emails, and they were

6  very clearly for emails because a lot of times they would say

7  from this sender but not this sender and people don't talk and

8  text the same way we do in emails.  They were never intended to

9  be run as text message searches.

10         So when Mr. Fisher says it's not surprising that very

11  little came up, that's why.  It's not because they don't talk

12  about substantive issues.  They have a bring-your-own-device

13  policy.  They don't have work-issued phones.  We have learned

14  from several people, including our clients, that Janine

15  Janosky, one of the decision makers in this case, was a

16  prolific texter and routinely texted and, in fact, told people

17  to communicate with her often via text.

18         So it is implausible at best to suggest that there are

19  only two texts that defendants say exist.  So what we asked

20  them to do in 37.2 conferring, we told them that running ESI

21  search terms on text messages was not a proper method.  We

22  never authorized or asked for that.  We asked them to please

23  just search these phones the way you normally would, you know,

24  for content about our clients, about the inspector general

25  investigation, or about the name of that actor, Roberto Torres.

1    They refused, refused, refused.  That's the way we brought the

2    motion, because that's the way to properly search for texts.

3    That's how we did it with our clients.  That's our first issue.

4    We'd like them to rerun the searches in a proper manner that

5    isn't going to obviously exclude any content.

6           Number two, their employment policy says that -- the

7    employee manual of the City Colleges says employees are

8    obligated to cooperate with defendant in conducting legal

9    investigations and assist defendant, quote, "in defending CCC

10   in litigation by providing the general counsel and their legal

11   staff with accurate and complete information within the

12   employee's knowledge and timely access to documents within the

13   employee's custody or control."

14          This would include the cellphones and the texts when

15   they're texting about our clients, the investigation, and our

16   clients' termination, or Roberto Torres.  So we don't -- when

17   they say "we don't have control over these things," we

18   certainly believe that they do.

19          We also asked them to the extent they contend that to

20   give us these people's cellphone numbers and cellphone

21   carriers, and we will issue subpoenas.  We were willing to do

22   that.  They refused to do that.  They said:  Well, send us an

23   interrogatory or a document request.

24          And we are really trying, Judge, to just get discovery

25   completed.  Nobody has any issues with plaintiffs' production.

1    There's no question that we have fully complied and have for a

2    long time.  So I don't want to "both sides" this.  I really

3    want to focus on what is missing, and what is missing is from

4    the defendant.  We've tried all kinds of different ways.  We

5    offered the alternative of a subpoena, and they just keep

6    saying no.

7              So we would ask that the Court order them to use their

8    policy to gather the phones of the current employees and

9    conduct attorney-supervised searches in a correct manner, not

10   with search terms, and to produce the responsive text messages.

11             THE COURT:  How did the defendant search these phones?

12             MS. O'MALLEY:  Well, for example, Judge --

13             THE COURT:  I'm asking the defendant.

14             MS. O'MALLEY:  Oh, sorry.

15             MR. FISHER:  I'm sorry, Your Honor.  Can you say that

16   again?

17             THE COURT:  How did you ask the employees to search

18   their phones?

19             MR. FISHER:  So all of the custodians, we asked them

20   to look through their texts and to identify whether or not they

21   had any texts about or with any of the three plaintiffs --

22        (Discussion off the record.)

23             MR. FISHER:  -- whether they had any texts that

24   concerned any of the three plaintiffs or were with any of the

25   three plaintiffs and whether they had any texts pertaining to

1    the plaintiffs' lawsuit, their complaints, or their

2    termination.  Then for the employees where we suspected that

3    they would have had texts, we brought an ESI vendor in who ran

4    the searches through their phones, and that was with direct

5    access to the phones through a -- through technology using

6    their laptop being taken control -- taking control of their

7    phone, and then over the Internet the ESI vendor was able to

8    take control of their phone through the laptop.

9            The request for the cellphone numbers and the request

10   for the cellphone carriers, this is -- you know, this dispute

11   is the first time we're hearing about this, and I would point

12   out that very early on we informed the plaintiffs that one of

13   the employees, Michael Held, had refused to allow us access to

14   his phone and refused to answer the question.  We suggested

15   that they subpoena him.

16           You know, that's -- I don't know what we're supposed

17   to do.  We can't hit him over the head and take his phone, and

18   the policy does not say that we get direct access to their

19   phone, which is something that employees have been very

20   reluctant to turn their phones physically over to us.  So we've

21   had to rely on questioning them about what's on their phones

22   with, again, the exception of those who indicated that they

23   might have something or those that we highly suspect have

24   something.

25           THE COURT:  All right.  So when the ESI vendor

16

1  searched the phones, the ESI vendor searched by looking for

2  communications between that individual and the plaintiffs and

3  then anything that involved any of the plaintiffs, their names

4  or the OIG investigation?

5       MR. FISHER:  Yes.  The proxy for that was the ESI

6  protocol.  If you look at Exhibit 9 to the defendant's

7  exhibits, you'll see there are 12 different sheets.  Each one

8  has literally hundreds of searches on them, and they

9  electronically ran those searches.  It was only after we had

10  finished our search of all the phones and our productions that

11  the plaintiff said that it was improper of us to use the ESI

12  protocol, which even in the snippet that the plaintiffs attach

13  on page 8 in their motion they refer to -- about the ESI:

14       "We have provided the search terms for use with their

15  email boxes.  However, please be mindful of your obligation to

16  also search for their text messages. "

17       And that should go -- this was all about the ESI

18  protocol.  I mean, it's unfortunate that plaintiffs did not

19  indicate that they wanted text ESI treated differently than

20  email ESI until after we've done our search, but those searches

21  are extremely thorough.  There are literally hundreds of them

22  on each of the 12 search pages.  So presumably if there was a

23  text that was relevant, it would have been found by the ESI

24  search protocol.

25       MS. O'MALLEY:  May I respond, Your Honor, briefly?

1          THE COURT:  Yes.

2          MS. O'MALLEY:  Sorry.  We actually -- Mr. Fisher

3     didn't read to you the rest of the snippet.  It's very clear.

4     The sentence says to use the search terms for the email boxes,

5     and then there's a whole --

6          THE REPORTER:  Counsel, slow down.

7          MS. O'MALLEY:  I'm sorry.  I apologize.  Yes.

8          I said he is correct that we said the search terms are

9     for use with the email boxes, and then we talk and now we're

10    just saying be mindful of your obligation for text messages.

11    We also talk about audiovisual recordings.  We talk about

12    platforms, other platforms, internal messaging platforms,

13    cellular devices, laptops, et cetera.

14         So there wasn't -- there was never an intent to use

15    search terms, email search terms, on text messages, and that is

16    not a proper way.  And I will tell you that my associate and I

17    just did a test the other day.  She texted me a sentence that

18    included the phrase "OIG investigation," and then she searched

19    her text bar for "OIG" and nothing came up.  "OIG

20    investigation," nothing came up.

21         The reason that we are asking for a proper search to

22    be run is because those ESI search terms will not show up in a

23    text bar, nor will they show up in a computerized program

24    because they're not designed for text message-style

25    communication.  They never were.

1    You know, the parties do have -- the defendant does

2  have an obligation to communicate.  We have said a hundred

3  times, including in our initial production, if there are any

4  questions or problems with the search methods, please contact

5  us before you run the searches or before you produce, you know,

6  et cetera.  So if there was any question in their mind about

7  how do you want us to search for texts, they could have asked

8  us, but they did not.  We never authorized or would have

9  permitted them to run ESI search terms on these text messages.

10    So for the three individuals whose phones they did

11  gain access to, the proper way to do that is literally to take

12  the four-or-five-month period and look themselves.  If they

13  have the text messages, look for text messages between the

14  custodians and our clients or the custodians and others

15  discussing either the plaintiff, Roberto Torres, the

16  investigation, or the termination.  It's not that hard.  We did

17  it for our clients.  We produced other text messages where our

18  clients were speaking about their terminations with other

19  employees.

20    THE COURT:  All right.  All right.  Again, I don't

21  believe that you're cognizant of the fact that I don't have all

22  day, right?

23    MS. O'MALLEY:  I understand, Judge.  We're trying to

24  do this comprehensively so that we don't have to take more of

25  the Court's time and so that we -- we've been very patient with

 1  the defendant, and we're just asking, our clients, you know,

 2  why aren't these resolved.

 3          THE COURT:  And I have been very patient with you.

 4          MS. O'MALLEY:  Thank you.

 5          THE COURT:  So with the text messages, I need

 6  defendant for the employee whose phone was stolen and the one

 7  who refused to turn it over, I need you to provide the

 8  information to the plaintiff so that they can send out

 9  subpoenas.

10          MR. FISHER:  And that is the carrier and the cellphone

11  number, Your Honor?

12          THE COURT:  Yes.

13          MR. FISHER:  We will do that.  I suspect that it will

14  not be productive for plaintiffs, but we'll provide that

15  information.  I don't think the cellphone carrier keeps text

16  messages, but I'll leave that to her.

17          THE COURT:  All right.  As for the individual for whom

18  you did the ESI search, does the vendor still have -- like does

19  the vendor make a copy of the texts that were on the phone?

20          MR. FISHER:  I would need to -- I don't know the

21  answer to that, Your Honor.  I know that we had significant

22  negotiations with, you know, who was going to see their texts

23  and where they would be saved.  I know I represented to the

24  employees that my firm is not keeping, you know, their entire

25  body of text messages, but I can check with the vendor to see

1   if the vendor saved like an archived copy.

2          THE COURT:  All right.  Check with the vendor and

3   then, you know, ask the vendor to go back -- and how many

4   individuals were there?

5          MR. FISHER:  It was three.  Three cellphones were

6   searched by the vendor.

7          THE COURT:  Okay.  So to go back and look at those

8   text messages and have the vendor pull out the text messages

9   between those individuals and the plaintiffs and then those

10  individuals and anyone who they may have spoken to about the

11  plaintiffs.  So, you know, you'd need to know the phone

12  numbers, you know, what the relevant phone numbers are, then

13  take a look at those text messages and just do a second look to

14  make sure that there isn't anything else that's responsive.

15         MR. FISHER:  Your Honor, so that we're not back in

16  front of you on this subject, what you're asking us to do is to

17  run any text messages between the cellphones that we're

18  checking and the plaintiffs.  Can I suggest that we run a

19  search for the names of the plaintiffs?  Well, I'll also

20  suggest that we add Mr. Torres' name in, and that way it

21  doesn't matter who the communication was with.  If the

22  communication concerned one of the plaintiffs or Mr. Torres, we

23  should find it.

24         THE COURT:  That's fine, so do that.  Before you do

25  that, before you have the vendor do the search, talk to

 1   plaintiffs' counsel so that they're on board, and then we're

 2   going to be done with this and put it to bed.

 3              MR. FISHER:  Yes, Your Honor.  We will try very hard

 4   to reach an agreement on what that search will look like.

 5              THE COURT:  All right.  Then the privilege log

 6   entries, why don't you send me in camera those three entries,

 7   the material of those three entries, so 11, 12, 19, and then I

 8   will take a look at those.

 9              MR. FISHER:  Yes, Your Honor.  With regard to entry

10   number 19 -- and I understand you've ruled, Your Honor -- just

11   if you recall from the last hearing where you issued a ruling,

12   you did not tell us to submit it in camera.  You told us to

13   only submit it if it contained other materials concerning this

14   case or the plaintiffs, which it does not.

15              But if you recall, it's an audiovisual recording.

16   We'll need to figure out how to give you that.  Is there a

17   method by which you would like to receive it?

18              THE COURT:  Just put it on a flash drive.  That's

19   fine.

20              MR. FISHER:  Okay.  A flash drive delivered to the

21   Court?

22              THE COURT:  Yes.

23              MR. FISHER:  Yes, Your Honor.

24              THE COURT:  And then it looks like with the non-ESI

25   things that defendant has done a supplemental production for

 1   the hiring and interview packets and the contact information,

 2   is that correct?

 3          MR. FISHER:  We have not provided all of the contact

 4   information that the plaintiff has requested.  That was not

 5   part of the request.

 6          MS. O'MALLEY:  We dispute that.

 7          MR. FISHER:  We provided some of it, and all of the

 8   work information is publicly available on the website.  But we

 9   haven't provided, you know, home phone numbers or personal

10   email addresses for the hiring people.  Again, that wasn't part

11   of what was asked for in discovery.

12          MS. O'MALLEY:  We dispute that.  Judge, may I make a

13   suggestion?  This is Megan O'Malley.  It might be one that the

14   parties would all like.

15          THE COURT:  What?

16          MS. O'MALLEY:  The remainder of the issues are over

17   completeness.  They're either discovery requests that defendant

18   and plaintiffs agreed that they would produce pursuant to 37.2

19   conferring or the performance reviews that Your Honor ordered.

20   The defendant had told us that a lot of these might be

21   addressed in their third supplemental answers and responses.

22   We don't have those yet.  These are the things that have been

23   promised since November.  So if they can get those to us within

24   the next 14 days, then we can review that to see if some of

25   these completeness issues have been resolved.

1          I would like them to be ordered, however, to produce

2     personal contact information.  I think they did that early on

3     in the case for other employees.  They know that that's the

4     appropriate method for plaintiffs' counsel to contact current

5     employees, not at work, and so that's the one thing I would

6     like in the order.

7          But otherwise if they -- and if they were ordered to

8     finally produce these long-promised third supplemental answers

9     and responses, we can then review those to see if some of these

10    other issues that we have with completeness have been

11    addressed.  If they have not, we can then try to work it out

12    with them, and if we can't we'll bring those issues to the

13    Court again.

14         However, I think with the Court's prior ruling earlier

15    in this call that they do have to provide an affidavit of

16    completeness, hopefully that will resolve some of these issue,

17    and we can shortcut this for Your Honor because I know you have

18    more to your call.

19         MR. MORRELL:  May I be heard on that, Your Honor?

20    This is Benjamin Morrell for defendant.

21         THE COURT:  Go ahead.  Go ahead.

22         MR. MORRELL:  Thank you, Your Honor.  The first thing

23    I would just like to point out is that before plaintiffs even

24    brought this motion or gave it us, we told them in an email

25    that we were going to have the supplemental responses ready by

1    a certain date.  That's obviously been pushed back a little bit

2    based on, I think, a response.  We are willing to get these

3    responses out.  They're almost finished, and we don't think an

4    affidavit of completeness is necessary, Your Honor, because the

5    Federal Rules of Civil Procedure are self-executing.  So 14

6    days is fine.

7         THE COURT:  So in 14 days get this out.

8         MR. MORRELL:  Yes, Your Honor.

9         THE COURT:  And make sure that it is complete and

10   done.

11        MS. O'MALLEY:  May we have the personal contact

12   information, Your Honor?

13        THE COURT:  Do you have it?  Do defendants have the

14   personal contact information?

15        MS. O'MALLEY:  Of their own employees?

16        THE COURT:  Is this for current employees?

17        MR. FISHER:  It's for both, Your Honor.

18        THE COURT:  So for current employees, I don't know why

19   plaintiffs would need the personal contact information.  You're

20   going to go through the defendant.

21        MS. O'MALLEY:  If they are non-management, we have a

22   right to contact them.  There are many, many witnesses in this

23   case.  We're trying to streamline.  You know, the amount of

24   depositions is already going to be a lot, and so we would like

25   to have -- to the extent that we need to send subpoenas or

1    interview those witnesses, if they're not management, that's

2    where the line is drawn.

3          So based on -- and for former employees obviously it

4    makes no sense to give us their work email address when they're

5    no longer working there.  Again, Your Honor, they gave us

6    personal home addresses and phone numbers previously, so they

7    know that that's what we mean by contact information.  We would

8    ask that they be compelled to produce that for non-management,

9    current employees, and also for employees their home contact

10   information, cellphone numbers, and email addresses.

11         MR. FISHER:  Your Honor, we did provide the

12   information with regard to the retaliation claim, the argument

13   that the termination was in retaliation.  We're off on the

14   multiple failure to rehire claims, and these are for some

15   people who got hired and some people who did not get hired and,

16   you know, some of those are now current employees and some are

17   now former employees themselves.

18         THE COURT:  All right.  But do you have the contact

19   information for either former -- you know, the last best

20   address that you have for former employees?

21         MR. FISHER:  I'm sure -- I hope I'm correct on this,

22   but I would expect that our client's HR department -- and these

23   are across seven different colleges -- would have a last known

24   address for former employees.  Whether that's good or not, I

25   don't know.  We know that some of them are not good because

1    some of these employees -- well, because with regard to the ESI

2    custodians, a different group, we were unable to contact some.

3    But we do have -- I would expect we would have a last known

4    address for former employees.

5              THE COURT:  All right.  So provide the last known

6    address for former employees.

7              MR. FISHER:  Yes, Your Honor.

8              THE COURT:  And then for non-management and current

9    employees, provide the last known address that you have.

10             MS. O'MALLEY:  Your Honor, can we also get phone

11   numbers and emails to the extent that they have those as well?

12             THE COURT:  Whatever you have, give it over to them.

13             MS. O'MALLEY:  Thank you, Judge.

14             THE COURT:  And then the deposition of Ms. Saleh,

15   plaintiffs need to provide a date.

16             MS. O'MALLEY:  Your Honor, we would ask that when

17   we've been waiting this long for defendant to produce this

18   stuff and they say that they need two months to review the

19   remainder of the ESI, we don't want them to divert their

20   efforts from complying with their obligations under discovery.

21             THE COURT:  I'm sure --

22             MS. O'MALLEY:  So I'm happy to -- I'm sorry.

23             THE COURT:  I'm sure that they're not personally

24   sitting there reviewing ESI.

25             MS. O'MALLEY:  I understand, Judge.  There's another

1  prejudice issue, though, and that is that they've had three

2  months to review the first batch of ESI.  They've asked Your

3  Honor for another two months.  That's five full months to

4  review the emails that are responsive in this case.

5          Those emails, you know, our clients may be asked about

6  those, or they may shed light on certain other issues.  It is

7  prejudicial to our clients not only to have defendant divert

8  its focus from compliance, but also to sit for a deposition

9  early when they haven't -- when I haven't had time to review

10  those to the extent that I would want to share that information

11  with my clients for full context.

12          Your Honor, early on in this case, you denied our

13  request to take the deposition of Walter Massey and said that

14  it was premature.  We suggest this is also premature.  There's

15  no reason that they have to take the deposition of one of the

16  plaintiffs right now.  They can do that.  Ms. Saleh is a young

17  woman.  She lives in Chicago.

18          THE COURT:  Counsel.

19          MS. O'MALLEY:  Yes?

20          THE COURT:  I need you to provide a date for your

21  client's deposition.  If they want to take her deposition at

22  this point, we are at the tail end of discovery production.  If

23  they decide they want to take her deposition and something

24  comes up that they later want to ask her about, well, that's

25  too bad.  Whatever they have, they're going to provide to you

 1   before her deposition, and if they discover something after her

 2   deposition, well, then they've missed the boat.

 3          MS. O'MALLEY:  I guess my concern, Judge, is what

 4   might be in the emails that would be relevant to my client's

 5   testimony that isn't being provided before her deposition, you

 6   know, so I --

 7          THE COURT:  You have the ability --

 8          MS. O'MALLEY:  Pardon me?

 9          THE COURT:  You have the ability later.  She can

10   provide an affidavit.  There's lots of things.

11          MS. O'MALLEY:  Okay.  Well, as long as that's the

12   case, because there is that case law that defendants are

13   constantly moving to strike affidavits and say that it can't

14   supplement deposition testimony, but we'll seek Your Honor's

15   guidance.  I will provide them with a --

16          THE COURT:  The Seventh Circuit actually says that's

17   not the case, so provide a date for her deposition.

18          MS. O'MALLEY:  We'll do that, Your Honor.

19          THE COURT:  All right.  How long -- how many people

20   are there going to be in oral discovery?  How many depositions

21   do you anticipate?

22          MS. O'MALLEY:  We anticipate that there is going to be

23   on the plaintiffs' side probably at least somewhere between 15

24   to 20, and the reason being, Your Honor, we just ran a

25   comparison between the plaintiffs' and defendant's 26(a) and

1    and the people who were expressly named in either party's

2    answers to interrogatories.  There are 29 individuals who are

3    expressly named by both parties in answering interrogatories,

4    and that seems to be a pretty good indicator that those people

5    have relevant knowledge if they were identified expressly by

6    both parties.  We hope not.  We hope to be able to take less

7    than 29 depositions, but this is a three-plaintiff case.  If it

8    had been filed separately, it would be 30, you know.  We would

9    have been entitled to 30 under the rules.

10          So we would ask leave to take, I would say, up to 25,

11   hoping not to use all of those at this point.  Then if we

12   determine as we go along that there may be additional

13   depositions, we can come to Your Honor for the request of

14   additional relief.

15          THE COURT:  How many people do defendants anticipate

16   you need to depose?

17          MR. FISHER:  We anticipate deposing three people, Your

18   Honor, and I believe the rules say that the plaintiffs are

19   entitled to ten depositions.  I would think that when we get to

20   the end of oral discovery, if they need more, that's why we

21   have Rule 37.2.  You know, maybe we can agree to a few more,

22   but it seems premature to expand the scope of the depositions

23   beyond what the rules call for at this time.

24          MS. O'MALLEY:  Well, we think the rules actually allow

25   10 for plaintiffs, and we really just don't want to bring --

```
 1              THE COURT:  All right.
 2              MS. O'MALLEY:  -- about further fighting among the
 3   parties.
 4              THE COURT:  Just stop, both of you.  So I am going to
 5   set a close of fact discovery for July 31st.  I will set a
 6   further status date for August 2nd, and I want a joint status
 7   report by July 26th that tells me where you are in fact
 8   discovery, where you are with settlement discussions, if you
 9   want a referral to the magistrate judge for a settlement
10   conference, whether you're going to need expert discovery
11   before dispositive motions, and then proposed schedules for
12   expert discovery and summary judgment briefing.
13              MR. FISHER:  Your Honor, August 2nd, is that going to
14   be a telephonic hearing for sure, Your Honor?
15              THE COURT:  Yes.
16              MR. FISHER:  I'll be out of town.
17              THE COURT:  Yes, at 9:30.
18              MR. FISHER:  Okay.  I believe that's 8:30 mountain
19   time.
20              THE COURT:  Yes.
21              MR. FISHER:  Thank you, Your Honor.
22              THE COURT:  You're welcome.
23              MS. O'MALLEY:  Thank you, Judge.
24          (Proceedings concluded.)
25
```

1                    C E R T I F I C A T E

2            I, Patrick J. Mullen, do hereby certify that the

3    foregoing is a complete, true, and accurate transcript of the

4    proceedings had in the above-entitled case before the Honorable

5    SARA L. ELLIS, one of the judges of said Court, at Chicago,

6    Illinois, on January 31, 2023.

7

8                              */s/ Patrick J. Mullen*
                               Official Court Reporter
9                              United States District Court
                               Northern District of Illinois
10                             Eastern Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25